IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| NIKITA MAYFIELD a/k/a | ) | |
| NICK MAYFIELD | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | |
| TARGET CORPORATION | ) | |
| Serve Registered Agent At: | ) | |
| THE CORPORATION COMPANY, INC | ) | |
| 112 SW 7th Street, Ste. 3C | ) | |
| Topeka, KS 66603 | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COME NOW, Plaintiff Nikita ("Nick") Mayfield (hereinafter "Plaintiff") by and through

his undersigned counsel and for his Complaint against Defendant Target Corporation (hereinafter

"Defendant") alleges and states as follows:

### Parties and Jurisdiction

1.      Plaintiff is a citizen of the United States, residing in Topeka, Shawnee County,

Kansas and, at all times pertinent to this Complaint for Damages, was an "employee" within the

meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*  ("ADA"); Title VII

of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* ("Title VII"); and the Family

Medical Leave Act, 29 U.S.C.A. § 2611 *et seq.* ("FMLA").

2.      Defendant Target is for-profit corporation organized under the laws of the State of

Kansas and Defendant has been operating and existing continuously within the State of Kansas,

having its registered agent is located at: The Corporation Company, Inc., 112 SW 7th Street,

Suite 3, Topeka, Kansas 66603.  At all times pertinent to this Complaint for Damages, Defendant Target was an "employer" within the meaning of the ADA, Title VII and FMLA.

3.      This is an employment discrimination and retaliation lawsuit based upon and arising under the ADA, Title VII and FMLA.

4.      All of the unlawful acts and practices set forth below were committed within Shawnee County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

<u>**Administrative Procedure and Procedural Posture**</u>

5.      On or about July 28, 2017, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of disability, discrimination on the basis of Plaintiff's race, and unlawful retaliation (attached as Exhibit A and incorporated herein by reference).

6.      On or about February 14, 2018 the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit B and incorporated herein by reference).

7.      The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC investigation of Plaintiff's claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

8.      Through the filing of Plaintiff's Charge of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

9.      Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

**General Allegations Common to All Counts**

10.     Plaintiff has been an employee of Defendant from approximately 2004 until present.

11.     Plaintiff performs work for Defendant in its Processing Center facility located at 1100 SW 57th St., Shawnee County, Kansas.

12.     During Plaintiff's employment with Defendant, Plaintiff began to suffer from and was diagnosed with a panic disorder and generalized anxiety disorder. Plaintiff attends therapy and takes medication due to his medical condition.

13.     At the time Plaintiff was hired by Defendant, he was hired under the "Warehouse" job title. This job title included: inbound, outbound, MVP, and other Warehouse. Plaintiff started in the Inbound department.

14.     In the Inbound department, Plaintiff received all of the merchandise coming in. Plaintiff would throw boxes on a belt or use a forklift to move pallets.

15.     After twelve and one-half years in the Inbound department, Plaintiff moved to the Warehouse. In the Warehouse department, Plaintiff's job duties included: order picking, bulk locations, placing items back on the racks with the order picking equipment, and packing items into boxes.

16.     There is a group of employees at Target, as well as a few managers, who are referred to as the "good ole boys." This group is all Caucasian, and all hang out together. They do not really socialize with anyone else and none of these employees hang out with African American employees.

17.     At one point, Plaintiff and some of his co-workers overheard this group having a conversation while they were sitting at a table together. The group was stating that they never

had black people in their homes and Shawn brought up that his cousin was dating an African American man and his cousin was staying at his home. The other Caucasian employees were laughing and making fun of Shawn from having a black man in his home and asking Shawn why he would allow a black man in his home.

18.     A few years into Plaintiff's employment, he was called "n-gger" on two occasions by separate co-workers. Both times, Plaintiff reported it to management. Afterward, Plaintiff was simply told to return to work and nothing was done in regard to Plaintiff's complaints.

19.     In or about 2014, Plaintiff learned that a "problem area" job was made available. Plaintiff asked his Group Leaders, Brian, Kyle and Brad, about Plaintiff getting the job. Plaintiff's Group Leaders said that they would look at their options, however, none of the Group Leaders ever spoke with Plaintiff about the position again and a younger Caucasian man, named Dustin, got the job.

20.     Plaintiff inquired as to why Dustin was given the position. Plaintiff was told that Dustin had more knowledge. Plaintiff disputed this reasoning, to which Plaintiff was told he was not given the job because of his "attitude."

21.     At this time, Plaintiff had never received any disciplinary action based on his "attitude." Plaintiff complained to Human Resources, an individual named Sarah, that he did not believe that it was fair that Dustin got the job. Plaintiff was told in response that he needed to work on his "attitude". Plaintiff then told Sarah that, because he is African American, everything he said was critiqued. Specifically, if a Caucasian employee said the same things as Plaintiff they would not be told they were rude, but Plaintiff was told that he was rude or intimidating.

22.     Despite Plaintiff's attempts to inquire, he was never told what he has said specifically that was "rude" or "intimidating."

23.     In or about 2014, a "small packaging" job became available. Again, Plaintiff inquired to his Group Leaders, Brian, Kyle and Brad about the job and Plaintiff let them know that he was interested in the position. Plaintiff's Group Leaders told him that they would look into it. The small packaging job was given to a Caucasian man, named Mark, who had less experience than Plaintiff.

24.     In general, Plaintiff's work location has very few minority supervisory employees in the Warehouse. Upon information and belief, Caucasian employees are given more leeway than racial minorities.

25.     For example, on one occasion, a Caucasian intern was working in the Warehouse. One day, she told Plaintiff that a large group of people were going out for a going away party. The intern asked Plaintiff to exchange phone numbers so that she could give Plaintiff the details of the party. Plaintiff stated that he was not sure if that was appropriate under Target's policies. The intern invited other Target employees to the party and did exchange numbers with those employees. Plaintiff did not go to the party.

26.     The following day Plaintiff was called into Human Resources. Plaintiff was asked about his relationship with the intern, to which Plaintiff responded it was a working relationship. Plaintiff was then asked if he goes around asking for people's phone numbers. Plaintiff stated that he did not ask for the intern's phone number, the two discussed exchanging phone numbers due to the party but that he never asked for her phone number.

27.     Plaintiff felt that Human Resources was implying that he was harassing women as he was further questioned in detail. Plaintiff was very upset and embarrassed by this line of questioning.

28.     The only other employee who was questioned by Human Resources was also African American and upon information and belief, this man was asked the same or similar questions as Plaintiff.

29.     Upon information and belief, this investigation by Defendant Human Resources was racially motivated.

30.     Another employee of Target, who was also African American, learned what happened to Plaintiff and the other employee and reported to Human Resources that the intern had numerous conversations with other employees that were sexual in nature and asked why this was allowed, but Plaintiff and the other employee were questioned, and the intern was not.

31.     Plaintiff was called back into Human Resources and was told not to "worry about it" and to just "watch what you are doing in the future." Plaintiff responded that he did not do anything wrong.

32.     Plaintiff was extremely uncomfortable by this situation and felt terrible.

33.     The African American employee who went to Human Resources to inquire about this situation was terminated shortly thereafter.

34.     Upon information and belief, the intern married someone she met while employed at Target and had numerous friendships with Target employees, all of which were Caucasian, while she was employed there.

35.     Upon information and belief, none of the Caucasian employees were questioned by Human Resources about their relations with the intern.

36.     On another occasion, a Caucasian employee was taking thirty (30) minute breaks, three times per day, although employees were only allowed to take short bathroom breaks. Plaintiff was asked by his Group Leaders why his group's numbers were low, even though he

was not in charge and was equal to all other employees in the group, and Plaintiff informed the Group Leaders that this employee was taking such long breaks.

37.     Plaintiff was told by his Group Leader to talk to the employee about it and tell her to not take such long breaks. Plaintiff did as he was told and attempted to speak with this employee about the issue, to which the employee responded "so?" and walked away and was gone for approximately an hour and a half.  Plaintiff reported this to the Group Leader. Upon information and belief, nothing was ever done in regard to this employee taking such long breaks.

38.     In or about December 2014, Plaintiff was operating a forklift to complete a job that another employee, who is not African-American, was assigned that day, but the employee was not performing their job duties and was instead sitting around and talking.  Once Plaintiff began driving the forklift, he honked as required, but the employee did not to make eye contact with Plaintiff.  Plaintiff continued placing his pallet as the employee was not directly in his way; however, the employee turned and stepped directly into the pallet of the Plaintiff. Numerous employees saw the incident.

39.     An incident review was conducted the same day and Plaintiff was found to be at fault.  Upon information and belief, two employees who did not witness the incident were forced to state that Plaintiff caused the accident.  Plaintiff was told by his supervisor that "someone has to take the fall."  Plaintiff was put on corrective action the same day, which upon information and belief, was the fastest that Plaintiff had ever seen someone get put on a corrective action plan.

40.     Plaintiff was questioned by a Senior Operations Manager, an Operations Manager, and a Human Resources employee all at the same time in order to get Plaintiff to admit

the accident was his fault.  During this meeting, Plaintiff started sweating and having severe heart palpitations and was extremely nervous.

41.     Plaintiff's symptoms began to worsen in this meeting. Plaintiff went to the Target nurse and Plaintiff was told to go back to work. Due to the medical event Plaintiff was experiencing, Plaintiff called his doctor and was told that he needed to come in immediately. Plaintiff was experiencing a panic attack, which Plaintiff's doctor identified to have been caused by the anxiety due to the work environment,

42.     Plaintiff has been taking intermittent leave under the Family and Medical Leave Act ("FMLA") and has suffered panic attacks and anxiety ever since the questioning by the Defendant's employees.

43.     In or about January 2016, Plaintiff's Group Leader Chris came to him because Plaintiff was late to work. Plaintiff had not been late for work in years, but was told that he was going to receive corrective action. Plaintiff inquired as to why he was receiving corrective action and he was told that it was because he also had missed days in October of 2015. Plaintiff explained that those days were days that Plaintiff had requested through FMLA.

44.     Chris told Plaintiff it did not matter, but did not write Plaintiff up. Although Plaintiff was not written up, Plaintiff felt that overall the situation was caused due to Plaintiff taking time off due to his medical condition.

45.     In general, Chris was very hostile towards Plaintiff anytime he took time off for his medical condition and would not speak to Plaintiff for at least a day or two when Plaintiff took off of work.

46.     Plaintiff began to receive complaints from several Operating Managers, Pat, Chris and Dave, that Plaintiff needed to give more notice when taking FMLA. Pat told Plaintiff that if

he was going to take FMLA, Plaintiff should let them know beforehand. Chris and Dave would say similar things to Plaintiff as well. Plaintiff explained that due to the nature of his condition, he cannot know when he would need to take FMLA until the day he needs to take it.

47.     In or about December 2016, Plaintiff overheard Operating Manager Dave state that Plaintiff will not be around much longer, in response to another employee complaining about Plaintiff taking too much time off of work.

48.     Plaintiff has heard on numerous occasions and from multiple co-workers that management is frustrated with Plaintiff because of his medical condition and FMLA, and that Target wants to get rid of Plaintiff.

49.     On one occasion, Operating Manager Dave was watching Plaintiff at work with another employee, Randy. Upon information and belief, these individuals were staring at Plaintiff and discussing him. After the conversation ended, Plaintiff approached Dave and asked if they were talking about him. Dave responded to Plaintiff that if he misses another day for FMLA, he should let an Operating Manager know ahead of time. Plaintiff told Dave that his medical condition is not predictable.

50.     The following day, Plaintiff asked Dave why he was worried about Plaintiff's FMLA and told Dave he was going to go to Human Resources, which Plaintiff did. Upon information and belief, Human Resources never followed up about Plaintiff's complaint although they had told Plaintiff they would investigate.

51.     Plaintiff has had teammates ask him if he is "for real" regarding his medical condition.

52.     Plaintiff also started receiving write-ups that he disputes and was placed on a probationary period during which time Plaintiff is ineligible for a transfer or promotion. Upon

information and belief, Plaintiff is being written up so that Target has a reason other than Plaintiff's FMLA to terminate him. Upon information and belief, the write-ups and disciplinary actions are in retaliation for Plaintiff taking off under the FMLA to address his mental health and anxiety disorder.

53.     On or about May 9, 2017, Plaintiff was written up for a "significant lack of attention to assigned duties and responsibilities…." The write up said that Plaintiff was in the breakroom on his phone during work hours.

54.     What actually occurred was that Plaintiff initially went out of the warehouse for a meeting with Human Resources to discuss a write up that Plaintiff had previously received in April. Plaintiff had complained that he believed that this write up was due to this medical condition and FMLA leave.  Plaintiff was told that his write up was valid and he was not given the opportunity to appeal it or speak with anyone else about it.

55.     After the meeting, Plaintiff found himself locked out the warehouse because his badge was not working. Plaintiff tried to get in numerous times but there was no one present to let him in. Plaintiff also called twice but no one answered. Plaintiff then sat down in the breakroom to wait for someone to come by and let him in, which Plaintiff believed would be very soon, as it was twelve (12) minutes until break time and people walked by all the time.

56.     Eventually, the same Human Resources employee Plaintiff had just spoken with let him in. However, the next day Plaintiff received a disciplinary write up, despite explaining the situation to Human Resources and his supervisor.  Upon information and belief, this writeup is in retaliation for Plaintiff's complaints to Human Resources.

57.     Plaintiff was also written up on or about April 28, 2017 for a "no call no show." Specifically, Plaintiff had put in for a full day of vacation, but his manager told him that only a

half day had been recorded. Plaintiff discussed this with his manager and had filled out the correct form, but apparently the form was never signed by Plaintiff's Group Leader. Plaintiff's Group Leader told Plaintiff that what happened was his fault but ended up writing up Plaintiff instead.

58.     Upon information and belief, this was in retaliation due to Plaintiff's race, Plaintiff's use of FMLA leave and his disability.

59.     Plaintiff was also written up on or about March 3, 2017 for making a comment. During the incident in the write-up, Plaintiff was experiencing very high anxiety because he was taking on a very heavy workload due to other employees not getting their work done. Plaintiff admits he did say, "I need to go the f-ck home" and Plaintiff understood that this language was inappropriate and told his manager that he understood.

60.     Plaintiff's doctor told him in hindsight, that Plaintiff should have left when he began experiencing anxiety; that is what Plaintiff's FMLA is for. Plaintiff regrets what he said that day, but anxiety can be difficult to control and on that particular day Plaintiff was experiencing high anxiety.

61.     In or about the end of May 2017, Plaintiff received notification that because he had received three corrective actions in one year, he was receiving a final warning and the next step would be termination.

62.     Plaintiff had tried his best to simply do his job and take as little FMLA as possible but still had sleepless nights from the stress of the workplace and sometimes the anxiety was so awful Plaintiff could not work.

63.     On or about May 31, 2017, Plaintiff went out on a full medical leave of absence from work because of his anxiety. On or about May 18, 2017, Plaintiff sent an email to Human

Resources and explained that the reason he had been on intermittent FMLA for the past two years was because Plaintiff had initially experienced a panic attack at work, which led Plaintiff to be diagnosed with anxiety.

64.    Plaintiff reported that he had been harassed due to his race, including not receiving promotions or special assignments because of his race. Plaintiff explained that he was discouraged from reporting this racial harassment. Further, Plaintiff explained the treatment he was experiencing due to his medical condition and FMLA.

65.    In Plaintiff's email, he explained that he was going to apply for short term disability due to the anxiety caused by Plaintiff's work environment. Plaintiff stated that he would rather be working and wanted to speak with Target about a way to help accommodate his disability so that Plaintiff could work without exacerbating his medical condition.

66.    Plaintiff received a response from Human Resources on or about May 26, 2017 and was told that because he was out on a leave of absence, it was up to him whether he wanted to speak with Human Resources then or wait until he returned to work.

67.    Plaintiff then spoke with someone from Human Resources and asked to give examples of other times teammates were not written up for the same things that Plaintiff was written up for. Plaintiff provided those examples.

68.    In or about the end of May 2017, Plaintiff also went and spoke with an individual in Human Resources in person. Plaintiff discussed his complaints of discrimination and retaliation that he was experiencing due to his FMLA and medical condition. Human Resources stated that they had conducted an investigation and did not find anything to support Plaintiff's complaint. The employee, Haley, made the comment "well I have stress too. So I have to deal

with it too." Plaintiff was told to let them know when he was ready to come back to work, but they refused to discuss trying to accommodate Plaintiff.

69.     Because Target would not engage in an interactive process with Plaintiff to attempt to accommodate his diagnosed medical condition, which is a disability, Plaintiff was forced to take short term disability leave, which was approved. Plaintiff's short-term disability does not cover his full wages.

70.     Plaintiff was on short term disability from May 19, 2017 until on or about September, 6 2017.

71.     The write-ups Plaintiff has received by Target did not begin until Plaintiff started taking FMLA leave and disclosed his disability to Target.

72.     Plaintiff's emotional and physical state has worsened as Plaintiff has lost fifteen pounds, has had suicidal thoughts and Plaintiff frequently wakes up in the middle of the night.

### COUNT I- DISPARATE TREATMENT IN VIOLATION OF THE ADA

73.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

74.     Plaintiff was disabled, as defined by the ADA, at all relevant times.

75.     Plaintiff suffers extreme anxiety and panic attacks affecting his major life activities including: self-care, sleeping, concentrating, thinking, communicating, and working.

76.     At all relevant times, Defendant was aware Plaintiff suffered a physical impairment which substantially limited one or more major life activity.

77.     At all relevant times, Defendant was aware that Plaintiff had a record of having such impairment.

78.     Defendant perceived Plaintiff as disabled.

79.     Plaintiff is a qualified individual as defined by the ADA.

80.     Plaintiff could perform the essential functions of his job duties for Defendant with or without reasonable accommodation.

81.     Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was a motivating factor in Defendant's decision to treat Plaintiff differently than other employees, including looking for reasons to write-up Plaintiff.

82.     Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled was motivating factor in Defendant's decisions to discipline Plaintiff.

83.     Upon information and belief, Defendant unlawfully discussed Plaintiff's disability with Plaintiff's co-workers.

84.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

85.     As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, significant weight loss and other non-pecuniary losses.

86.     By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

87.     As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount

sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II – FAILURE TO PROVIDE REASONABLE ACCOMMDATION IN VIOLATION OF THE ADA

88.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

89.     Plaintiff is disabled, as defined by the ADA.

90.     Plaintiff requested reasonable accommodation for his disability from Defendant.

91.      Defendant refused to provide Plaintiff with a reasonable accommodation.

92.     Defendant failed to engage in an interactive process by which to discuss the reasonable accommodation of Plaintiff.

93.     Defendant refused to transfer Plaintiff to a different department to accommodate his disability.

94.     Defendant refused to correct the workplace environment which exasperated Plaintiff's medical condition.

95.     Defendant refused to provide any other accommodation to Plaintiff so that he may perform all essential functions of his job.

96.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

97.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, significant weight loss and other non-pecuniary losses.

98.    By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

99.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT III – DISPARATE TREATMENT AND HARASSMENT-RACE IN VIOLATION OF TITLE VII

100.    Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

101.    During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment and an ongoing practice and/or pattern of

discrimination/disparate treatment and harassment based on his race, African-American, by Defendant.

102.   Plaintiff was subjected to different work requirements than other similarly situated Caucasian employees in regard to the terms and conditions of his employment.

103.   Plaintiff's race, African-American, was a motivating factor in Defendant's decision in the harassment and different treatment of himself when compared to other Caucasian employees.

104.   The harassment suffered by Plaintiff adversely affected the terms, conditions and privileges of his employment.

105.   The disparate treatment of Plaintiff adversely affected the terms, conditions and privileges of his employment.

106.   All actions or inactions of or by Defendants occurred by or through their owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

107.   Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, as alleged herein.

108.   As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

109.    The conduct of Defendant was outrageous and evidences an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV - RETALIATION IN VIOLATION OF THE ADA

110.    Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

111.    Plaintiff is disabled, as defined by the ADA, at all relevant times herein.

112.    Plaintiff is a member of a protected class because of his disability and because he requested accommodation.

113.    Plaintiff requested reasonable accommodation from Defendant due to his extreme anxiety.

114.    In retaliation for Plaintiff's reporting his disability/or request for accommodation, Plaintiff was singled out for discipline.

115.    Plaintiff reported his disability to Defendant and reported the negative treatment he was enduring due to his disability.

116.    In retaliation for this reporting, Plaintiff was disciplined.

117.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefit as well as other monetary and non-monetary benefits.

118.     As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, significant weight loss and other non-pecuniary losses.

119.     By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

120.     As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT V - RETALIATION IN VIOLATION OF TITLE VII

121.     Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

122.    Plaintiff is a member of a protected class because of his race.

123.    Plaintiff engaged in protected activity under Title VII by reporting harassment to human resources.

124.    Defendant took adverse actions against Plaintiff as a result of his engaging in the aforementioned protected activity.

125.    Defendant's actions constitute unlawful employment discrimination against Plaintiff and is violation of Title VII.

126.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, significant weight loss and other non-pecuniary losses.

127.    By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

128.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys'

fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## <u>COUNT VI - RETALIATION IN VIOLATION OF FMLA</u>

129.    Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs as if fully set forth herein.

130.    Plaintiff was an employee of Defendant for the twelve months prior to his requesting medical leave under FMLA.

131.    Plaintiff worked at least 1,250 hours for Defendant in the year prior to his requesting medical leave under FMLA.

132.    Plaintiff suffered and continues to suffer from a serious medical condition during his employment with Defendant.

133.    This medical condition is a physical condition which involves numerous treatments by a health care provider, including therapy and medication.

134.    At all times relevant Plaintiff was continuously seen by a health care provider for his medical condition.

135.    Plaintiff is entitled to take leave for up to twelve (12) weeks because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

136.    Defendant began treating Plaintiff differently and negatively when he began to take intermittent FMLA leave due to his medical condition.

137.    Plaintiff's taking leave was a motivating factor in Defendant's decisions to discipline Plaintiff.

138.    Defendant's actions constitute unlawful employment discrimination against Plaintiff and is violation of Title VII.

139.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include past and future wages and benefits, career damage and diminished career potential, and other non-pecuniary losses.

140.    By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

141.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of liquidated damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, liquidated damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury in Topeka, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Katherine E. Myers
Katherine E. Myers    KS # 25833
Alexander L. Edelman KS #25821
kmyers@elmlawkc.com
aedelman@elmlawkc.com
4051 Broadway, Ste 4
Kansas City, Missouri 64110
Telephone: (816) 533-4976
Facsimile: (816) 463-8449

ATTORNEYS FOR PLAINTIFF